## Trust Companies' Messenger Service.

*Trust companies—Messenger service—Branches—Act of April 29, 1874.*
Trust companies incorporated under the General Corporation Law of April 29, 1874, P. L. 73, are not authorized to maintain messenger service outside of the cities where their principal offices are located, to collect deposits of money and to transact business for their real estate and trust departments.

Attorney-General's Department. Opinion to Hon. John W. Morrison, Acting Commissioner of Banking.

PUSEY, Dep. Att'y-Gen., June 7, 1922.—In reply to your inquiry under date of April 25, 1922, as to whether a trust company incorporated under the General Corporation Act of April 29, 1874, P. L. 73, may maintain messenger service outside of the city where its principal office is located, to collect deposits of money, and to transact business for its real estate and trust departments, I beg to advise you as follows:

It has been uniformly held by the Attorney-General's Department that trust companies incorporated under the Act of April 29, 1874, may lawfully maintain sub-offices or sub-agencies for the restricted purpose of receiving and paying out moneys, provided a full report of the operations is made to the principal place of business of any such trust company at the close of the day, the assets transferred thereto and the liabilities reported; but they may not maintain branch offices, in the strict sense of the term, for the transaction of their general business. See opinion of Attorney-General Hensel, Branch Office, 4 Dist. R. 54; also opinion of Deputy Attorney-General Kun, March 22, 1916, 25 Dist. R. 376; Opinions of Attorney-General, 1915-16, page 281; opinion of Deputy Attorney-General Davis, Oct. 9, 1916; Opinions of Attorney-General, 1915-16, page 291; opinion of Deputy Attorney-General Myers, July 1, 1920 (not yet reported).

Attorney-General Hensel in his opinion on this subject remarked: "I can conceive that certain persons at certain places might be designated, during certain hours of the day, to receive and pay out moneys for a trust company located in another part of the same city, providing a full report of the operations of the day were made to the principal place of business at the close of the day, the assets transferred thereto and the liabilities reported, so that, in effect, the business at the sub-office or sub-agency would be actually the business of the main office transacted, for convenience, at another place, but immediately related to it, just as a messenger, officer or counsel of the trust company might transact certain of its business outside of its main office; but whenever such an office becomes, in fact or within the contemplation of the law, a 'branch' establishment, I am of the opinion that it ought not to be permitted."

The foregoing powers were expressly granted to banks of discount and deposit by the Act of Assembly of July 28, 1917, P. L. 1235, the act, however, specifying that such sub-office or sub-agency may be established and maintained "in the city, borough or township" in which the principal office of such bank is located.

The maintenance of a regular messenger service by a trust company as a customary and general method of carrying on its business for the purpose of receiving deposits and transacting the business of its real estate and trust departments is in effect the maintenance of innumerable roving branch agencies, which is quite different from the mere establishment of a definitely located sub-office or sub-agency, with a full report of its operations made to the principal place of business of the trust company at the close of the busi-

2 D. & C.

ness day, so that the entire business operations of the company may at all times be brought within the view and supervision of the Banking Department.

The test of compliance with the spirit and purpose of the law with regard to the maintenance of sub-offices or sub-agencies "or messenger service" by trust companies is not merely one of location within the city, borough or township, but also whether such companies doing a quasi-banking business, such as receiving deposits and paying out money, bring their entire business within the whole view and supervision of the Banking Department, and also transact their business at the location authorized by their charters.

Manifestly, such complete view and supervision as the law contemplates cannot be accomplished if such sub-office or sub-agency is located or established beyond the locality in which the principal place of business of the corporation is located, or if the business of the trust company may be conducted by roving messenger service away from its authorized place of business.

While business conducted occasionally and under special circumstances, by messenger, agent or attorney, away from the principal office of the corporation may, and undoubtedly does, constitute a necessary and proper incident to the transaction of the usual business of a trust company, any official recognition of the loose and careless method of doing a banking or trust company business by means of messenger service, as a practice or system of carrying on the same, would constitute a dangerous precedent, and would be a menace to the safety and security of the banking institutions of our Commonwealth. To countenance or permit it would seem clearly contrary to public policy.

I am, therefore, of the opinion that it is not within the contemplation of the banking laws of Pennsylvania that there should be any practice on the part of any trust company or bank to maintain a messenger service for the purpose of receiving deposits, paying out moneys or transacting business for its real estate or trust departments.     From Guy H. Davies, Harrisburg, Pa.